FEDERAL KEMPER INSURANCE COMPANY, INC v HEALTH
INSURANCE ADMINISTRATION, INC

Docket No. 74545. Argued January 14, 1986 (Calendar No. 3).—Decided March 28, 1986.

Duane Forsyth was injured in an automobile accident. Federal Kemper Insurance Company, Inc., his no-fault insurer, paid his medical and hospitalization expenses resulting from the accident. Kemper thereafter sought reimbursement from Health Insurance Administration, Inc., Forsyth's health insurer. The policies of both insurers contained coordination of benefits clauses. Kemper then brought an action in the Kent Circuit Court against Health Insurance Administration, Inc., claiming that Health Insurance was the primary insurer and seeking reimbursement and a judgment declaring Health Insurance liable for all future medical and hospital expenses which might arise. The court, George V. Boucher, J., granted summary judgment for the defendant. The Court of Appeals, BRONSON, P.J., and R. B. BURNS and BORSOS, JJ., reversed, rejecting both coordination provisions as conflicting and holding that each insurer's liability was to be prorated on the basis of the proportion of the combined policy limits represented by the limits of each insurer's policy (Docket No. 70094). The defendant appeals.

In a unanimous opinion by Justice RILEY, the Supreme Court held:

The health insurer is primarily liable for payment of the insured's medical expenses. By giving effect to the no-fault insurer's coordination of benefits provision, the purposes of the no-fault act to contain auto and health insurance costs while eliminating duplicate recovery are furthered, and the result is

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur 2d, Automobile Insurance §§ 340 et seq.
    General release of tortfeasor by accident victim as affecting automobile insurer's obligation for personal injury protection (PIP) benefits. 39 ALR4th 378.
    Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.
    See also annotations in the ALR3d/4th Quick Index under No-Fault Insurance.

consistent with the legislative scheme vesting in insureds rather than insurers the option of coordinating benefits.

1. Under the no-fault act, an insured may coordinate personal injury protection benefits with health insurance for a reduced premium. The benefits are not paid directly by reason of the operation of the statute; rather, a motor vehicle owner is required to obtain insurance providing such benefits, and the statutory scheme contemplates that the benefits will be paid under the required insurance. The objective of providing for coordination of benefits is to eliminate duplicative recovery and to reduce auto and health insurance costs.

2. In this case, each of the policies contained coordination provisions which conflicted with the other, limiting the liability of each insurer to the amount of loss in excess of coverage provided by the other. However, the conflict cannot be resolved by disregarding both clauses and prorating liability. The no-fault act mandates that no-fault insurers offer coordination of benefits at reduced premiums where an insured has other health and accident coverage so as to eliminate duplicate recovery and contain or reduce insurance costs. To meet the goal, it was intended that no-fault insurance be secondary to health and accident insurance. If the coordination clause of the health insurer were deemed to be secondary, it would effectively and unilaterally deprive no-fault insureds of the option of obtaining coordinated benefits at reduced premium rates.

Affirmed as modified.

135 Mich App 76; 351 NW2d 900 (1984) modified.

INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — COORDINATION OF BENEFITS.

A health insurance carrier was primarily liable for payment of an insured's medical expenses resulting from injuries suffered in an automobile accident where the insured elected to coordinate no-fault personal injury protection benefits with health insurance (MCL 500.3109a; MSA 24.13109[1]).

*Cholette, Perkins & Buchanan* (by *Robert J. Riley* and *Robert E. Attmore*) for the plaintiff.

*Fischer, Franklin, Ford, Simon & Hogg* (by *James E. Brenner* and *Arthur J. LeVasseur*) for the defendant.

Amici Curiae:

*Barris, Sott, Denn & Driker* (by *Stephen E.*

*Glazek* and *Morley Witus)* for Michigan Mutual Insurance Company, Amerisure Insurance Company, Frankenmuth Mutual Insurance Company, and Citizens Insurance Company of America.

*Lawrence J. Day.*

RILEY, J. This case concerns a dispute between plaintiff no-fault insurance carrier and defendant health insurance carrier over which is liable for payment of a claimant's medical expenses resulting from injuries suffered in an automobile accident. Both policies contain coordinated benefits clauses, and each insurer claims that its coverage is secondary to the other. We are persuaded that to give effect to defendant's clause would defeat the Legislature's intent, expressed in § 3109a of the no-fault act,[1] to allow insureds the option of coordinating their medical benefits. Thus, we hold that defendant health insurer is primarily liable.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the accident, the claimant was insured for personal injury protection (PIP) benefits under a no-fault automobile insurance policy issued by plaintiff. Because claimant elected to coordinate these no-fault PIP benefits with his health insurance, plaintiff offered the coverage at a reduced premium rate. Plaintiff's coordination of benefits clause provides:

> This insurance does not apply to the extent that any amounts are paid or payable for allowable expenses to or on behalf of such named insured or relative under the provisions of any other insurance, service, benefit or reimbursement plan pro-

---

[1] MCL 500.3109a; MSA 24.13109(1).

viding similar direct benefits, without regard to
fault, for bodily injury sustained as a result of the
operation, maintenance or use, including the load-
ing or unloading, of a motor vehicle. [Michigan
Personal Injury Protection Endorsement (Medical
Expense Amendment) Form Number AUTO 523A.]

The claimant also had coverage for medical and
hospital expenses under a group health insurance
policy written for his employer by defendant. That
policy provides:

Under "No Fault" legislation the benefits of this
plan shall be determined after the benefits pro-
vided by "No Fault" legislation in those states
where such legislation is in force and allowable by
law.

Following the accident, plaintiff paid the claim-
ant's medical and hospitalization expenses and
commenced this action, claiming that defendant is
the primary insurer. Plaintiff sought reimburse-
ment from defendant for payments made to the
claimant and a judgment declaring defendant lia-
ble for future medical and hospital expenses which
might arise. Alternatively, plaintiff sought contri-
bution from defendant in the event the trial court
determined that the parties were both liable.

Each company moved for summary judgment. In
a written opinion, the trial judge found that there
was no conflict between the two "escape clauses":

Although it would be far easier simply to choose
plaintiff's position as a means of implementing the
policies of reducing No-Fault premiums and of
promoting oversight of hospital and medical costs
recognized in *LeBlanc v State Farm,* 410 Mich 173
[301 NW2d 775] (1981), and *Nyquist v Aetna Ins
Co,* 84 Mich App 589 [269 NW2d 687] (1978), *aff'd*
404 Mich 817 (1979), the Court should perhaps

> make a careful juxtaposition of the two policy provisions to see if there is, in reality, a conflict. I can find none. In defendant's elaborate attempt (attached as Exhibit 2 to plaintiff's brief) to deal with conflicting coordination of benefits provisions, it clearly makes itself secondary to "benefits provided by 'no fault' legislation." Note that it does not refer to benefits provided by No-Fault *policies* purchased by the insured but rather to the benefits provided by No-Fault *legislation.* On the other hand, plaintiff's policy excludes amounts "paid or payable" by other insurance. Because defendant's policy pays no benefits in this situation, plaintiff's coordination of benefits language does not become effective by its own terms. [Emphasis in original.]

Accordingly, defendant's motion for summary judgment was granted and plaintiff's was denied.

Plaintiff appealed to the Court of Appeals, and that Court reversed the decision of the trial court. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 135 Mich App 76; 351 NW2d 900 (1984). First, the Court characterized the policies as having conflicting "other insurance" provisions. Then, relying on *Farm Bureau Mutual Ins Co v Horace Mann Ins Co,* 131 Mich App 98; 345 NW2d 655 (1983), *lv den* 419 Mich 880 (1984), which followed the minority rule that where conflicting "other insurance" provisions exist, both are rejected, the Court prorated liability between plaintiff and defendant on the basis of the proportion of the combined policy limits represented by the limits of each insurer's policy.

We granted defendant's application for leave to appeal. 422 Mich 936 (1985).

## II. DISCUSSION

Before this Court, defendant first takes issue with the Court of Appeals conclusion that the two

policies involved contain conflicting "other insurance" provisions. Specifically, defendant claims that the Court of Appeals incorrectly characterized the following clause of its policy as an "other insurance" provision:

> Under "No Fault" legislation the benefits of this plan shall be determined after the benefits provided by "No Fault" legislation in those states where such legislation is in force and allowable by law.

Before addressing defendant's argument as to why the above clause is *not* an "other insurance" provision, some brief background may be instructive.

Many insurance policies contain language intended to restrict or escape liability for a particular risk in the event that there is other insurance.[2] Such "other insurance" provisions are of three basic types: "pro rata," "escape," and "excess."[3] A "pro rata" clause purports to limit the insurer's liability to a proportionate percentage of all insurance covering the insured event, while an "escape" or "no liability" clause provides that there shall be no liability if the risk is covered by other insurance, and an "excess" clause limits liability to the amount of loss in excess of the coverage provided by other insurance.

Disputes may arise, as in the instant case, when two or more insurance policies covering the same risk contain such provisions. Moreover, various combinations of the clauses may occur (*e.g.,* pro rata v excess, pro rata v escape, excess v escape), and courts have developed different rules for re-

---

[2] 44 Am Jur 2d, Insurance, §§ 1781-1793, pp 769-782; 7A Am Jur 2d, Automobile Insurance, §§ 432-437, pp 77-94.

[3] *Id.;* see also *Jones v Medox,* 430 A2d 488, 489, n 1 (DC App, 1981).

solving the conflicts.[4] Two trends have evolved. The majority rule attempts to reconcile the competing provisions by discerning the parties' intent through an analysis of the clauses. See, *e.g., Jones v Medox,* 430 A2d 488 (DC App, 1981). Critics of this approach argue that it is circular and that the decision as to which clause is primary depends on which policy is read first. Thus some courts deem the provisions "mutually repugnant" and reject both clauses. *Lamb-Weston, Inc v Oregon Automobile Ins Co,* 219 Or 110, 129; 341 P2d 110 (1958). Courts adopting this minority view, such as the Court of Appeals in the instant case, hold that liability must be prorated. *Id.*[5]

Against this background, we return to defendant's argument, which attempts to distinguish its clause from a typical "other insurance" provision. Defendant argues that a typical "other insurance" provision, such as that in plaintiff's policy, requires reference to the other policy involved to determine whether the first policy provides benefits. Conversely, it is *not* necessary, defendant claims, to examine plaintiff's policy to ascertain whether defendant's policy provides benefits because its clause is a " 'no-fault' *law* exclusion" (emphasis in original). Defendant explains: Its pol-

---

[4] See, *e.g.,* Anno: *Resolution of conflicts, in non-automobile liability insurance policies, between excess or pro-rata "other insurance" clauses,* 12 ALR4th 993; Anno: *Apportionment of liability between automobile liability insurers where one of the policies has an "excess insurance" clause and the other a "proportionate" or "prorata" clause,* 76 ALR2d 502; *Union Ins Co (Mutual) v Iowa Hardware Mutual Ins Co,* 175 NW2d 413, 416 (Iowa, 1970).

[5] In addition to the instant case, two Court of Appeals cases have taken this approach; *i.e., Farm Bureau, supra* (conflict between an "escape" clause and a "prorata" clause); *Mary Free Bed Hospital & Rehabilitation Center v Ins Co of North America,* 131 Mich App 105; 345 NW2d 658 (1983), *lv den* 419 Mich 943 (1984) (conflicting "excess" provisions). It is important to note, however, that neither of these cases involved no-fault insurance. We express no opinion as to the correctness of these decisions.

icy "does not provide any benefits in a state which has a [n]o-[f]ault [a]utomobile [i]nsurance law until benefits provided for under [that] law are exhausted. . . . [Since] the Michigan no-fault law provides that a 'no-fault' insurer is liable to pay for all reasonable medical and hospital expenses which result from 'accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle,'" MCL 500.3105; 500.3107; MSA 24.13105; 24.13107, its policy does not provide coverage.

We are not persuaded by this attempted distinction. PIP benefits are not payable pursuant to Michigan's no-fault law. The law requires a motor vehicle owner to obtain insurance affording PIP benefits. MCL 500.3101; MSA 24.13101. PIP benefits are not paid directly by reason of the operation of the statute; rather, the statutory scheme contemplates that PIP benefits will be paid under the required insurance. *Reynolds v Life Ins Co of Virginia*, 399 So 2d 519, 520 (Fla App, 1981), *lv den* 411 So 2d 383 (Fla, 1981).

Thus, we agree with the Court of Appeals characterization of the two policies as containing conflicting "other provisions." More precisely, each policy contains an "excess" provision. However, as noted above, the Court of Appeals resolved the conflict by disregarding both clauses and prorating liability. With this resolution, we cannot agree.

Certainly, the minority rule of *Lamb-Weston* upon which the Court of Appeals relied has the advantage of ease of application, and it has been almost always followed in cases involving competing "excess" clauses, even by those courts generally adopting the majority view.[6] In the instant

---

[6] Anno: *Apportionment of liability between liability insurers each of whose policies provides that it shall be "excess" insurance,* 69 ALR2d 1122.

case, however, unlike *Lamb-Weston,* the no-fault act is implicated. Thus, any analysis of these clauses must include consideration of the no-fault act.

Recently, the Court of Appeals decided *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 145 Mich App 722; 377 NW2d 902 (1985), a case similar to the instant case.[7] There, despite a clearly stated attempt by the health insurer to evade primary liability,[8] the Court discerned the legisla-

---

[7] Additionally, *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268; 345 NW2d 683 (1983), concerned conflicting coordinated benefits provisions in a no-fault policy and a health-accident policy. The case involved a no-fault policy containing an excess liability clause identical to plaintiff's. The health and accident policy clause provided:

"If a person is eligible for medical or dental benefits under any plan of medical coverage or under any other type of insurance, including automobile insurance, the benefits provided by GHP may be reduced (or GHP may collect from the members amounts received by him) so that during the calendar year up to, but not more than, 100% of the person(')s medical and dental expenses (at least a portion of which is covered under one or more such plans) will be paid by all such plans." *Id.,* p 271.

The Court found that this clause did not clearly manifest the insurer's intent to be secondarily liable:

"First, it only states that benefits provided by defendant '*may* be reduced.' Second, whether a claimant must merely qualify for, or actually receive, other benefits for the provision to operate is unclear." *Id.,* p 273. (Emphasis in original.)

In contrast, the Court believed that the no-fault insurer's clause, identical to the one in the instant case, "clearly states that the insurer has only secondary liability." *Id.* Accordingly, the health insurer had primary liability.

[8] The defendant's policy provided:

"Section 23

"Co-ordination of Benefits

"In addition to the benefits payable under this plan, sometimes an employee or dependent is entitled to benefits for the same hospital or medical expenses under group fault or no-fault auto insurance, individual no-fault auto insurance, medicare or another group plan. Should this type of duplication occur, the benefits under this plan will be co-ordinated so that the total benefits from all plans will not

tive intent that no-fault coverage would be secondary, and, therefore, deemed the health insurance primary. We are persuaded that a similar analysis and result is proper in the instant case.

By 1974 PA 72, the Legislature enacted MCL 500.3109a; MSA 24.13109(1), which provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

This section mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has "other health and accident coverage." In *LeBlanc v State Farm Mutual Automobile Ins Co,* 410 Mich 173, 197; 301 NW2d 775 (1981), this Court recognized the dual purposes of § 3109a of "eliminat[ing] duplicative recovery and . . . contain[ing] or reduc[ing] insurance costs." See also *Nyquist v Aetna Ins Co,* 84 Mich App 589, 592; 269 NW2d 687 (1978), *aff'd* 404 Mich 817 (1979).

Both the *LeBlanc* and *Frederick & Herrud* Courts quoted from a report on HB 5724 (enacted as § 3109a) which was prepared by the Analysis Section of the House Insurance Committee. The report gave several arguments in support of and in opposition to the bill. The arguments were based on the assumption that the coordination of benefits

---

exceed the hospital or medical expenses actually incurred. In all cases employees with no-fault auto insurance coverage, the auto insurance carrier will be primary." *Frederick & Herrud, supra,* p 732, n 2.

scheme would make health and accident insurance the primary coverage.[9]

[9] " 'Background Information:

" 'Currently 4 of the 283 auto insurance companies doing business in Michigan offer deductibles or exclusions which cover only those items not covered by the policy holder's health and accident insurance. (These 4 auto-insurers offer the secondary or 'wrap-around' coverage.)

" 'Last September, Blue Cross/Blue Shield filed modifications with the Insurance Bureau proposing to allow its members to coordinate their medical benefits with their auto coverage by making the no-fault coverage primary and the Blues coverage wrap-around or the secondary coverage.

" 'Argument For:

" 'The bill would save millions of dollars for Michigan drivers and would offer them an opportunity to eliminate their duplicate, overlapping insurance coverage since automobile insurers would be required to offer deductibles or exclusions which wrap-around a policy holder's health and accident coverage. No-fault insurers would offer these deductions at reduced premiums, and State insurance officials estimate the 5 to 6 million Michigan drivers could save $100 million annually.

" 'Argument For:

" 'Passage of the bill would create more flexibility in health and accident coverage by offering consumers an insurance option which the vast majority of underwriters operating in Michigan do not offer. Further, if the Blue Cross/Blue Shield plans gain approval for their proposed modifications, the consumer seeking health and accident coverage will have yet another option from which to choose. The bill does not make it mandatory for an insurance buyer to select these deductibles and exclusions so many could still opt for overlapping coverage.

\* \* \*

" 'Argument Against:

" 'The efficiency and ease with which the no-fault statutes have been applied would be hampered by the bill, and insurance premiums could actually rise rather than decline. In lieu of automatic, fully comprehensive coverage by the auto insurer (under no-fault), under the proposed wrap-around deductibles, both the no-fault insurer and the health and accident company would be required to devote extra time and money to investigate an accident claim. They would have to reach an agreement to the extent to which each is responsible to the injured person. The rapid simplified reparations which have thus far characterized no-fault settlements would be bogged down by this process of double investigation and adjustment.

" 'Argument Against:

" 'No-fault insurers would be unable to establish fair and equitable rates since the multitude of wrap-around combinations would make it impossible to determine a schedule for the proposed deductibles and exclusions. No-fault is only 4 months old and insurance companies

Additionally, *LeBlanc* and *Frederick & Herrud* relied on a letter to Governor William G. Milliken from Daniel J. Demlow, the Commissioner of Insurance, dated February 26, 1974, which expresses the view that the "bill gives each consumer the chance to select or reject deductibles based on his existing non-automotive health and accident coverage." *LeBlanc,* pp 194-195, *Frederick & Herrud,* p 731. As the *Frederick & Herrud* panel noted, "This

have yet to accumulate enough data to establish those premiums confidently. Spokesmen for the industry claim 18 months of data are necessary for the establishment of accurate premiums for a specific no-fault policy.

" 'Argument Against:

" 'Required secondary coverage by no-fault providers raises many ambiguities concerning the insurance statutes since no-fault is, by law, a mandatory requirement. Persons who reduce their no-fault medical coverage and then change jobs, or become unemployed, or those who misrepresent their accident and health coverage could be left without the minimum coverage required by the no-fault statutes.

" 'Argument Against:

" 'Primary coverage by health and accident insurers would weaken the coverage on many persons and would serve to confuse policyholders since it would substitute unknown, variable, noncompulsory benefits for compulsory, definitive and standardized benefits. No-fault is specifically designed to cover automobile accidents and injuries, offering the same basic coverage for everyone, but the accident and health insurers as well as Blue Cross/Blue Shield provide a puzzling number of alternative coverages, none of which are [*sic*] as complete and comprehensive as those of no-fault.

" 'Argument Against:

" 'The bill discriminates against auto personal injury protection (no-fault) insurers since it does not require the accident and health insurers or Blue Cross/Blue Shield plans to offer similar deductibles to persons desiring to make their comprehensive no-fault policies primary, with other coverages being secondary. If the intent of the bill is to save money for the consumer by offering a maximum of alternatives at reduced premiums, then health carriers should also be compelled to offer wrap-around coverage. If accident and health coverage were made secondary, the reduction in premiums would be much larger, particularly for persons whose policies include coverage for many dependents.

" 'Neutral Discussion (Proposed Amendments):

" 'The Michigan Association of Insurance Companies suggests offering consumers another alternative by requiring health and accident insurers (by statute) to offer at reduced rates, deductibles and exclusions to persons already covered under no-fault.' " (Emphasis deleted.) *Frederick & Herrud, supra,* pp 728-731.

statement makes sense only if health and accident insurance is considered primary." *Id.*

Defendant urges that the objectives of eliminating duplicative recovery and containing insurance costs would also be served by giving effect to its coordination of benefits clause, thereby making its coverage secondary and plaintiff's primary.

However, we note that the health insurer in *Frederick & Herrud* made a similar argument, which was rejected by the Court. Section 3109a requires "prior approval by the commissioner" of "[t]he deductibles and exclusions" offered by no-fault carriers. By contrast, defendant, like the health insurer in *Frederick & Herrud,* points to no evidence on the record that the Insurance Commissioner has approved its coordinated benefits coverage. The *Frederick & Herrud* panel continued:

> There is further no evidence that defendant's coordination-of-benefits clause was offered in such a way as to foster consumer savings, a major goal of § 3109a, . . . or as to how premiums or employee co-pay were affected by this clause to insure that defendant is not reaping unearned premiums. That is, because no-fault is mandatory and coordination of benefits must be offered *at a reduced rate,* the insured gains an advantage from such a clause by the required reduction in premium while the insurer's reduced profits reflect a corresponding reduction in its potential liability. No such check necessarily applies to health and accident insurance. It would not be difficult to simply insert a coordination-of-benefits clause in a health and accident policy without a corresponding reduction in premium or co-pay where the determination of primary liability is covered by the policy language. [*Id.,* p 733. Emphasis in original.]

Similarly, other than defendant's conclusory statement that by offering coordination of benefits it "is

able to offer reduced premiums," there is no record evidence that its coordinated benefits coverage is offered at lower rates.

A further purpose of § 3109a—controlling health care costs—was recognized in *Dean v Auto Club Ins Ass'n,* 139 Mich App 266; 362 NW2d 247 (1984), *lv den* 422 Mich 921 (1985), and noted in *Frederick & Herrud, supra.* The *Dean* Court quoted the following argument from the analysis on HB 5724:

> "Argument For:
> "The skyrocketing hospital and medical costs could be contained to a greater extent with health and accident as the primary coverage since these policies, like the Blue Cross/Blue Shield plans, have established limits on their reimbursement of doctor and hospital expenses. A physician who knows his or her patient has unlimited medical coverage has no incentive to keep the doctor bill at a minimum." [*Id.,* p 273. Emphasis deleted.]

In *Frederick & Herrud,* p 732, the Court contrasted health care expenses paid by no-fault insurance, noting that they are not subject to such limits. Thus, health care costs are contained by recognizing health insurance as primary.

Finally, defendant quotes from a bulletin issued by the Insurance Commissioner on April 5, 1974 (Bulletin AD 74-2), arguing that it evidences an understanding that when no-fault and health policies each purport to be secondary, as in the instant case, the no-fault policy is deemed primary. The bulletin contains guidelines to be followed in various situations. For example:

> 2. If auto insurance is secondary with no deductible.
> a. and health is secondary with a deductible, auto pays the entire loss.

* * *

b. and health is secondary with no deductible, auto pays the entire loss.

Defendant notes that plaintiff admitted in its answers to defendant's interrogatories that it had knowledge of Bulletin AD 74-2 at the time it issued the policy in the instant case, and suggests that plaintiff set the premium accordingly.

We are not persuaded that the result suggested by the bulletin should be determinative. While we agree that courts give weight in statutory interpretation to the opinion of administrative officials charged with implementing and enforcing the statutes being interpreted, *Nyquist, supra,* earlier we noted that the Insurance Commissioner, in his letter to the Governor, expressed his understanding that no-fault insurers could, as indeed they must, offer secondary coverage at the insured's option. Reading the bulletin and letter in isolation, the Insurance Commissioner's view is not entirely clear. The letter, however, is consistent with the legislative history surrounding the enactment of § 3109a. We think that if the bulletin guidelines labeled "2(a)" and "2(b)" above were strictly followed, health insurers could effectively and unilaterally deprive no-fault insureds of their option to obtain coordinated medical coverage at reduced premium rates by inserting exclusions like that in defendant's policy. Defendant's counsel conceded this at oral argument.

### III. CONCLUSION

We conclude, therefore, that defendant health insurer is primarily liable. Giving effect to plaintiff's coordinated benefits provision furthers the purposes of § 3109a to contain both auto insurance costs and health care costs, while eliminating duplicative recovery. Further, this result is consistent with the legislative scheme vesting in insureds, rather than insurers, the option of coordi-

nating benefits.[10] Accordingly, we so modify the decision of the Court of Appeals.

We assess no costs, a public issue being involved.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAV-ANAGH, BOYLE, and ARCHER, JJ., concurred with RILEY, J.

---

[10] Our decision today is made in the factual context in which the no-fault insured chose coordinated coverage and the no-fault insurer, accordingly, charged a lower premium rate. We express no view as to what the result would be when the insured does not so elect and the no-fault premium is not correspondingly reduced. We note, however, that at oral argument, plaintiff's counsel admitted that in that situation the no-fault insurer would not be secondary, nor entitled to reimbursement from the health insurer.