659 F.Supp. 635 (1987)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Individually and as Subrogee of Robert Beach and Lois Beach, Plaintiff,
v.
AMERICAN COMMUNITY MUTUAL INSURANCE COMPANY, City Auto Parts Company, City Auto Parts and Affiliated Companies Voluntary Employee Benefit Plan and American Life and Casualty Company, Defendants.
No. 85-CV-10472-BC.
United States District Court, E.D. Michigan, N.D.
April 22, 1987.
*636 Edward B. Davison, Gault, Davison, Bowers & Hill, Flint, Mich., for plaintiff.
Frank M. Quinn, Braun, Kendrick, Finkbeiner, Schafer & Murphy, Bay City, Mich., for American Community Mut., City Auto Parts Co., and City Auto Parts and Affiliated Companies Voluntary Employee Benefit Plan.
Timothy J. Walker, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Iowa, for American Life & Cas. Co.

MEMORANDUM OPINION
CHURCHILL, District Judge.
Following a hearing, the court took under advisement the motion for summary judgment filed by Defendants City Auto Parts Company, City Auto Parts and Affiliated Companies Employee Benefit Plan and American Life and Casualty. These defendants are referred to collectively as the Plan. Plaintiff seeks to recover amounts it paid to Robert and Lois Beach under a no-fault auto insurance policy which it claims should have been secondary to the medical coverage provided the Beach family under the plan. Michigan law provides that coordinated no-fault insurance is secondary to other forms of insurance, including medical insurance such as that offered by the defendants. See M.C.L.A. § 500.3109a; Federal Kemper v. Health Insurance Administrator, 424 Mich. 537, 383 N.W.2d 590 (1986). The plan contends the state law establishing its priority over no-fault insurance is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1003(a) et seq.[1]
ERISA regulates all employee benefit plans that are established or maintained by any employer engaged in commerce and/or any employee organization representing employees engaged in commerce. 29 U.S.C. § 1003(a). The Plan in this case involved City Auto Parts Company, and other affiliated companies, pooling their resources to form a trust fund from which to pay claims from their employee medical coverage. The plan then purchased step-loss insurance from Defendant American *637 Life and Casualty to protect it against individual claims exceeding $5,000 or aggregate claims exceeding $250,000. Despite the insurance, the employers remain primarily liable for the benefits which are payable. There is no question that City Auto Parts and its affiliated companies, including Lois Beach's employer, are either engaged in or affecting commerce. Accordingly, the plan is clearly regulated by ERISA.
Not all state laws are preempted by ERISA. The act expressly supersedes all state laws that "relate" to any employee benefit plan. 29 U.S.C. § 1144(a). A "connection with or reference to ..." a plan results in preemption. Shaw v. Delta Airlines, 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-900, 77 L.Ed.2d 490, 501 (1983). Under such a test, the mandates of § 3109a of the Michigan insurance code, which would subordinate the plan's coordination clause to that in a no-fault policy, would clearly be preempted. Michigan courts have recognized this preemption. State Farm Mutual Automobile Insurance Company v. C.A. Muer Corp., 154 Mich.App. 330, 397 N.W.2d 299 (1986). However, the ERISA preemption analysis does not end here. The act further provides, in the so-called "savings" clause, that state laws which regulate insurance, banking or securities are not preempted. 29 U.S.C. § 1144(b)(2)(A). The savings clause would appear to exempt sections of the Michigan insurance code from preemption because the code regulates terms of insurance.[2] Yet, the act creates an exception to its exception in the so-called deemer clause where it declares that;
... [no] trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
29 U.S.C. § 1144(b)(2)(B). Thus, while a state's regulation of insurance companies is preserved from preemption by the savings clause, employee benefit plans themselves cannot be subject to such regulation under the deemer clause. It is the Plaintiff State Farm's contention that the Michigan insurance code is not preempted because the plan buys insurance from American Life and Casualty. Thus, plaintiff's analysis would have ERISA preempt the Michigan insurance code's application to claims over $5,000, or aggregate claims over $250,000, which are insured by a commercial insurer. Claims under the step-loss insurance limits would involve only the plan itself, which could not be deemed to be an insurance company, and would thus be free of state insurance regulation. Defendants contend that the mere purchase of step-loss insurance does not take their plan, or any part of it, outside the deemer clause. They contend that the plan is merely protecting itself against an employer's inability to pay and is not in any sense buying insurance for its members.
The seminal case in this area is Metropolitan Life Insurance Co. v. Commonwealth of Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In Metropolitan Life, the Supreme Court was faced with an Massachusetts statute which required insurers to provide minimum mental health care benefits. The Court found that the statute easily preempted as "relating to" a plan. 471 U.S. at 738-39, 105 S.Ct. at 2389, 85 L.Ed.2d at 739-40. Just as easily, the Court found that a common *638 sense reading of the savings clause would remove the Massachusetts insurance law from the scope of the act's preemption. Id. 471 U.S. at 741, 105 S.Ct. at 2390, 85 L.Ed.2d at 741. Then in looking to the deemer clause, the court noted that the clause exempts from the savings clause laws regulating insurance contracts and concluded that
... the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the savings clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance savings clause, it would have been unnecessary for the deemer clause explicitly to exempt such laws from the savings clause when they are applied directly to benefit plans.
Id. Like the Massachusetts statute in Metropolitan Life, the Michigan insurance code seeks to regulate insurance contracts by insisting that they be primary to no-fault coverage. M.C.L.A. § 500.3109a. It clearly falls under the savings clause as did the Massachusetts statute. Since application of the code sections to the plan itself would run afoul of the deemer clause, the issue facing this court is whether the City Auto Parts plan is an insured plan or an uninsured plan.[3]
The plan in Metropolitan Life involved the plan purchasing group health coverage for its members from commercial insurers: Metropolitan Life Insurance Company and Travelers Insurance Company. 85 L.Ed.2d at 736. Defendants contend that they are not an insured plan because they only purchase step-loss insurance and the employer members of the plan are ultimately responsible for claims. They rely on the reported decision of Judge Anna Diggs Taylor in Northern Group Services v. State Farm, 644 F.Supp. 535. (E.D.Mi.S.D.1986) where the court concluded that the purchase of step-loss insurance did not render an employee benefit plan "insured" under Metropolitan Life. Id. at p. 539.
The Ninth Circuit has also reached the same conclusion as did Judge Taylor. In Moore v. Provident Life & Accident Ins. Co., 786 F.2d 922 (9th Cir.1986), the court held that a benefit plan which purchases "stop-loss" insurance, which comes into effect only when an aggregate amount of claims had been paid, is not an "insured plan". Id. at 927. Then, in United Food & Commercial Workers v. Pacyga, 801 F.2d 1157 (9th Cir.1986), the court ruled that a plan which purchased step-loss insurance for claims exceeding a pre-set limit were paid in one year. The court emphasized that the stop-loss insurance company did not pay benefits directly to participants nor did it ever take over the administration of the plan. Because it did not provide insurance to participants, the plan was termed a non-insured plan. Id. at 1161-62. A number of district courts have also agreed with this reasoning.[4]
The Sixth Circuit has followed a different course. In Michigan United Food & Commercial v. Baerwaldt, 767 F.2d 308 (6th Cir.) cert. denied ___ U.S. ___, 106 S.Ct. 801, 88 L.Ed.2d 777 (1985), the employee benefit plans in question purchased stop-loss insurance. The plan would pay all health and welfare benefits up to an agreed upon limit, after the insurance company paid excess claims. The insurance company administered the plan. 767 F.2d at 310. The court found that the plans were insured and the Michigan insurance code section *639 affecting them was not preempted. Id. at 312-13.
The instant case is very similar to Baerwaldt in that the City Auto Parts Plan purchased similar excess coverage from American Life and Casualty. However, here, the plan always administers itself and in Bauerwaldt, as well as Moore, the insurance company administered the plan. However, the sixth circuit did not rely on the plan's administration in finding that it was insured in Baerwaldt. The critical factor was the plan's purchase of insurance.[5] Moreover, the City Auto Parts Plan purchases far more extensive "stop-loss" insurance. Not only does it protect itself against a catastrophic amount of total claims, it also protects itself against all claims that exceed $5,000. Unfortunately, given today's rising health costs, it cannot be said that a $5,000 medical claim is a catastrophic claim against a medical insurer.
This court is bound to follow the decision of the sixth circuit and accordingly will deny the defendants' motion for summary judgment. Even if the court was not bound, it would be inclined to agree with the common sense meaning accorded the term "insured plan" in the Bauerwaldt opinion. Defendants' medical coverage for Lois Beach is primary under Michigan law which is not preempted. M.C.L.A. § 500.3109a. This ruling is same as to amounts greater and less than the $5,000 limit. Although the possibility of finding the plan to be "uninsured" for claims under $5,000, and "insured" for those over $5,000 was discussed at the hearing, such a ruling is now rejected. No such distinction was made in Bauerwaldt where the court ruled that the plan would be an insured plan as long as it purchased health insurance from insurers offering policies in Michigan. 767 F.2d at 313. In addition, a rule which holds that state law is preempted on certain layers of coverage and not preempted on other layers of coverage would fail the purposes of both ERISA and the Michigan No-Fault Act by unnecessarily adding unworkable complexity to this already technical area. Whether a plan is insured or uninsured under ERISA is a question of status, not of degree.
The court will enter an appropriate order denying the defendants' motion for summary judgment.
NOTES
[1] The underlying facts of this case began on November 16, 1983 when Lois Beach was injured in an automobile accident. On that date, her and her husband Robert carried a coordinated no-fault policy pursuant to M.C.L.A. § 500.3109a which specifically provided that it was secondary to group accident policies and medical plans. Also on the day of the accident, Lois and Robert Beach carried an accident policy with American Community which provided coverage for auto accident losses but purported to limit coverage to $300 when benefits are provided under the Michigan No-Fault Insurance Act. Finally, through her employment at the Akron State Bank, Lois Beach was covered by City Auto Parts plan for medical losses which expressly provided that no-fault coverage was always to be considered primary.
[2] Section 3109a is clearly within the ambit of the savings clause because it regulates the terms of insurance by requiring that no-fault policies be secondary to other types of insurance. The practice it seeks to regulate involves the spreading of the policyholder's risk from just the no-fault carrier to all relevant insurance carriers. The legislature clearly intended to prevent medical and accident carriers from drastically reducing their cost at the expense of no-fault carriers, who must offer coordinated coverage. The coordination of benefits from different insurers is certainly an integral part of the relationship between an insured and his or her insurer, and the practice of coordinating benefits to avoid coverage when possible is unique to the insurance industry. Thus under the three factors discussed in Metropolitan Life, infra, section 3109a regulates the "business of insurance."
[3] The Court in Metropolitan Life was fully aware of the difficulties in using an "insured-uninsured" dichotomy. See 471 U.S. at 745, 105 S.Ct. at 2392, 85 L.Ed.2d at 745. The Court noted that the statute is "not a model of legislative drafting". Id. 471 U.S. at 740, 105 S.Ct. at 2390. Justice Blackmun noted the unusual workings of the preemption provisions of the statute when he wrote,

While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time.
Id. Reference was also made to the criticism of the provision by many commentators. Id. 471 U.S. at 740 n. 16, 105 S.Ct. at 2389 n. 16, 85 L.Ed.2d at 740 n. 16. The Court reluctantly chose to follow a common sense reading of the statute and left the wisdom of the resulting policies for Congressional consideration. Id. at 745.
[4] See cases cited in Moore at 786 F.2d 927.
[5] Other than the Bauerwaldt and the Northern Group Services cases, see supra, the only case in the sixth circuit since Metropolitan Life was decided which addresses this issue was Michigan Mutual Insurance Co. v. Trustees of the Michigan Conference of Teamsters, 640 F.Supp. 191 (E.D.Mi.1986) in which Judge Gilmore decided that the Teamster Welfare Fund was uninsured because it did not buy insurance. Id. at 194.