Angelina **VARACALLI**, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Department of Health and Human Services, Defendants.**

**No. 90–CV–71361–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 19, 1990.

Raymond L. Morrow, Kemp, Klein, Umphrey & Endelman, Troy, Mich., for Angelina Varacalli.

John A. Ashton, Draugelis & Ashton, Plymouth, Mich., for State Farm Mut. Auto. Ins. Co.

William L. Woodard, Asst. U.S. Atty. (Robin M. Levy, Asst. Reg. Counsel, Dept. of Health and Human Services, of counsel), for Dept. of Health and Human Services.

## ORDER GRANTING FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

Plaintiff has filed suit seeking to have this court declare one of the defendants primarily responsible for the medical costs she incurred as the result of an automobile accident which occurred on May 14, 1989. Plaintiff was insured under a no-fault policy by defendant State Farm and is also insured by the federal Medicare program. The defendants have filed cross motions for summary judgment.

## STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The substantive law governs the determination of which facts are material. "Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## DISCUSSION

### I.

The federal defendant argues that federal Medicare law preempts state no-fault insurance law in this case and that

State Farm is thus primarily liable to plaintiff. The federal defendant further asserts that the laws applicable in this case are in direct conflict, and that state law must yield to federal law.

There are two statutes at issue in this case. At the time of plaintiff's accident, the federal statute, 42 U.S.C. § 1395y(b)(1), as amended in 1980, provided:

Payment under this subchapter [Medicare] may not be made with respect to any item or service to the extent that payment has been made, or reasonably can be expected to be made promptly (as determined in accordance with regulations), with respect to such items or service, under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including self insured plan) or under no fault insurance. Any payment under this subchapter with respect to any item or service shall be conditioned on reimbursement to the appropriate Trust Fund established by this subchapter when notice or other information is received that payment for such item or service has been or could be made under such a law, policy, plan, or insurance. . . .

The Secretary of Health and Human Services subsequently promulgated regulations designed to implement this statute. The regulation, 42 C.F.R. § 405.323, provides:

[P]ayment may not be made for services covered under an automobile medical or no-fault policy or plan even though State law or the insurance policy or plan states that its benefits are secondary to Medicare's or otherwise excludes or limits its payments if the injured party is also entitled to Medicare payments.

The state statute at issue, MCLA § 500.3109a, provides:

An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

The Michigan Supreme Court has found that "[t]his section mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has other health and accident coverage." *Federal Kemper Insurance Company, Inc. v. Health Insurance Administration, Inc.*, 424 Mich. 537, 546, 383 N.W.2d 590 (1986). Federal law states that Medicare is only secondarily liable for injuries resulting from automobile accidents when there are other insurance benefits available. These laws, therefore, are in conflict on this issue of primary and secondary liability.

In *Louisiana Public Services Commission v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), the Supreme Court enumerated the circumstances when federal law pre-empts state law.

The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between the federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation, and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.

476 U.S. at 368–69, 106 S.Ct. at 1898–99 (citations omitted).

The plain language of the federal statute reflects the congressional purpose that

Medicare is not to be the primary payment source in worker's compensation or automobile liability cases. The legislative history further reflects the congressional intent in enacting this provision. The statute was enacted as part of the Omnibus Reconciliation Act of 1980. The purpose behind the Medicare secondary payor provision was to achieve major fiscal savings in the Medicare program. H.R.REP. 1167, 96th Cong., 2d Sess., *reprinted in,* 1980 U.S.CODE CONG. & ADMIN.NEWS, 5526, 5717. The House Report explains:

> Under present law, medicare is the primary payor (except where a workmen's compensation program is determined to be responsible for payment for needed medical services) for hospital and medical services received by beneficiaries. This is true even in cases in which a beneficiary's need for services is related to an injury or illness sustained in an auto accident and the services could have been paid for by a private insurance carrier under the terms of an automobile insurance policy. As a result, Medicare has served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract. The original concerns that prompted inclusion of this program policy in the law—the administrative liability and the attendant delays in payment—no longer justify retaining the policy. . . .

*Id.* at 5752.

Thus, while Congress did not expressly state an intent to pre-empt state law, there is an actual conflict between the state and federal law and the state law presents an obstacle to accomplishing congressional objectives. In *Abrams v. Heckler,* 582 F.Supp. 1155 (S.D.N.Y.1984), the court considered the conflict between the Medicare Act and a New York no-fault statute. In that case, the plaintiff argued that the Secretary exceeded her authority when promulgating the regulations which implemented 42 U.S.C. § 1395y(b)(1). The court explained the standard of review:

> Considerable deference is due to the construction placed upon a statute by the agency charged with implementing its provisions. This is especially so where the statute expressly delegates to the agency the responsibility for defining the precise meaning behind a general statutory provision. Here, the statute instructs the Secretary to issue regulations for determining when payment "can reasonably be expected to be made" under a no-fault insurance policy. . . . Under these circumstances, the court's review is limited to determining whether the Secretary's regulation was promulgated in excess of her authority and whether it is arbitrary and capricious.

*Abrams,* 582 F.Supp. at 1163 (citations omitted).

The Court determined that the regulation was not promulgated in excess of the Secretary's authority and was, in fact, the only way possible to implement congressional policy.

> The Secretary's regulation, which makes Medicare only residually liable despite any Medicare-offset clause in a private insurance policy or any state law requiring such a clause, is the only rule which can effectively implement Congressional policy. If the Secretary were required to respect such clauses in determining when payment "can reasonably be expected to be made", Medicare would remain the primary payor for those beneficiaries covered by auto insurance. . . . The legislative history of the Omnibus Reconciliation Act of 1980, as a whole, demonstrates conclusively that the Act was designed to reduce federal expenditures. Section 953 would wholly fail this purpose if [another] construction was adopted.

*Abrams,* 582 F.Supp. at 1164 (citations omitted).

The court concluded:

> [T]he legislative history of § 953, as the Court reads it, does contain a "clear manifestation of [Congress's] intention" to make Medicare secondary to auto insurance benefits. Since New York law does precisely the opposite, Congress could only have intended to override the state statute. Although Congress did not, in

so many words, declare its awareness that in passing § 953 it would supersede state Medicare-offset laws, the court must infer that Congress intended to do so when such would plainly be the result of effectuating the statute's clearly articulated purpose.

*Abrams,* 582 F.Supp. at 1165.

This court finds that case to be persuasive. The regulation was promulgated within the scope of congressionally delegated authority and, thus, may pre-empt state law. This court must also infer that Congress intended to override any contrary state law in enacting the Medicare secondary payor provision. Consequently, this court finds that the federal statute at issue in this case pre-empts the state statute and Medicare is only secondarily liable to plaintiff for payment.

Defendant State Farm has cited several cases in support of its argument that federal law does not pre-empt state law in this case. This court finds those cases to be either unpersuasive or inapplicable to the case at bar. In *Federal Kemper Insurance Company, Inc. v. Health Insurance Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986), the Michigan Supreme Court held that where a health insurer and a no-fault carrier have coordinated benefit provisions, the health insurer is primarily liable for payment of medical benefits associated with automobile injuries. This case does not concern a public health benefits program, such as Medicare, addressing only a conflict between a private health insurance company and a no-fault carrier.

Defendant State Farm also cites *LeBlanc v. State Farm Mutual,* 410 Mich. 173, 301 N.W.2d 775 (1981). In that case, the Michigan Supreme Court held that Medicare is "other health and accident" insurance and was primary to Michigan no-fault insurance. This case is distinguishable based on the fact that the dispute arose prior to the 1980 amendment which added the Medicare secondary payor provision. At the time of *LeBlanc,* the Medicare program accepted responsibility as the primary payor. Based on the 1980 amendment to the Medicare statute, this is no longer the case, and *LeBlanc* is, therefore, inapplicable.

State Farm also cites *Employers Mutual Insurance Companies v. American Community Mutual Insurance Co.,* 175 Mich. App. 643, 438 N.W.2d 275, *app. den.* 433 Mich. 909 (1989), *app. granted on reconsideration,* 435 Mich. 861, 458 N.W.2d 877 (1990). That case involved a dispute between a Medicare supplemental insurer and the Michigan no-fault carrier. Medicare supplemental insurers are private insurance carriers. The Michigan Court of Appeals held that the Medicare supplemental insurer was primarily liable for payment of medical costs. In addition to the fact that this is a decision of the intermediate level state appellate court, and one in which appeal is currently pending, the holding concerns a private Medicare supplement insurer and not the federal Medicare program. Consequently, that case is inapplicable to the present controversy.

## II.

Defendant State Farm also cites the McCarran–Ferguson Act, 15 U.S.C. § 1012, in support of its contention that federal law does not pre-empt the Michigan no-fault statute. The Act provides in part:

(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance or imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance. . . .*

15 U.S.C. § 1012 (emphasis added).

The McCarran–Ferguson Act provides that, where there is a conflict between state and federal law, the state law will prevail if it is enacted for "the purpose of regulating the business of insurance" unless the federal law "specifically relates to the business of insurance."

The application of McCarran–Ferguson supports the federal defendant's claims that federal law pre-empts state law in this case because the federal enactment at issue specifically relates to the business of insurance. In *United States v. Blue Cross and Blue Shield of Michigan*, 726 F.Supp. 1517 (E.D.Mich.1989), the court held that Medicare secondary payor laws "undoubtedly directly relate to the business of health insurance" and that McCarran–Ferguson does not bar their application. *Id.* at 1523.

Defendant State Farm also cites *Northern Group Services v. Auto Owners Insurance Company*, 833 F.2d 85 (6th Cir. 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). This case concerns the question of conflict between the Employee Retirement Income Security Act of 1974 (ERISA) and the Michigan No–Fault Act. Neither that case nor its analysis is applicable outside the ERISA context to the Medicare question presented in this case.

### III.

■ The federal defendant also asserts that State Farm's policy clearly indicates that State Farm should pay primary before Medicare. On page 13 of Form 9822.5, under the section entitled "Limits of Liability," it states: "Any amount payable under this coverage shall be reduced by any amounts paid, payable or required to be paid under any federal or state law. This reduction does not apply to: 1. Medicare payments."

State Farm attempts to distinguish this language by asserting that it is only relevant to an unrelated section of the no-fault act. However, this policy language does not restrict the application of that section to a particular section of the no-fault act, nor does the policy language in any way qualify the application of that policy provision. Consequently, this court finds that based not only upon the provisions of the Medicare statute, but also upon the plain and express terms of its policy, State Farm clearly has the obligation to be the primary payor in this case.

### CONCLUSION

State Farm has the primary responsibility for payment of plaintiff's medical expenses incurred as a result of her automobile accident. Medicare has only secondary liability. State Farm is therefore ordered to pay benefits to her under the terms of its policy, including any interest payable under the Michigan No–Fault Act, MCLA § 500.3142, and any post judgment interest pursuant to 28 U.S.C. § 1961.

SO ORDERED.