**HASTINGS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT and Aetna Casualty and Surety Company of Illinois, Defendants.**

No. 1:91–CV–455.

United States District Court,
W.D. Michigan, S.D.

Sept. 10, 1991.

**1154**

John E. DeWane, Butzbaugh & Ryan, P.C., St. Joseph, Mich., for Hastings Mut. Ins. Co.

Brian D. Einhorn, Theresa M. Asoklis, Collins, Einhorn & Farrell, P.C., Southfield, Mich., for Automobile Ins. Co. of Hartford Connecticut, Aetna Cas. & Sur. Co. of Illinois.

OPINION

BENJAMIN F. GIBSON, Chief Judge.

This is a dispute between insurance companies over which is liable for the costs of defense and settlement of an underlying wrongful death action arising out of a boating accident. Plaintiff Hastings Mutual Insurance Company undertook the defense of the underlying action and paid $300,000.00 in settlement. Plaintiff now seeks to collect the entire amount paid for defense and settlement from defendants The Automobile Insurance Company of Hartford, Connecticut ("Hartford") and the Aetna Casualty & Surety Company of Illinois ("Aetna"). Presently pending is plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment.

I.

The relevant undisputed facts are as follows: On July 4, 1987, Kristi Ann Hansen ("Hansen") was operating a boat owned by James H. Weaver Jr. ("Weaver") on Indian Lake in Cass County, Michigan. While under Hansen's control, the boat struck another vessel resulting in the death of a passenger aboard that second boat, Julius Hadary ("Hadary"). Hadary's personal representative filed a wrongful death action against Hansen. Weaver was added as a defendant based upon Michigan Compiled Laws Section 281.1131 which imposes liability on the owner of a boat so long as the boat is being operated with the consent of the owner. Weaver admitted Hansen's consensual operation of the boat.

Weaver was insured under a boat owners protection policy issued by plaintiff. The policy declaration sheet describes the boat, motor, and trailer owned by Weaver and provides watercraft liability coverage in the amount of $300,000.00 per occurrence. It defines "insured person" to include the named insured and "anyone else using the insured boat with [the named insured's] consent." Exhibit 1 of Plaintiff's Complaint at 1. The policy provides coverage for "damages for bodily injury or property damage for which any insured person became legally liable because of a watercraft accident." *Id.* at § II.

Hartford issued Charles and Carol Hansen (Hansen's parents) a homeowners insurance policy. The policy declaration sheet provides coverage for the Hansens' "dwelling, other structures, personal property ... and personal liability." Exhibit 2 of Plaintiff's Complaint. The Hartford policy provides personal liability coverage in the amount of $300,000.00 per occurrence ($200,000.00 as provided in the declaration sheet and $100,000.00 in endorsement # 55621). Coverage is provided where "suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." *Id.* at § II. Hansen is an "insured" under the policy.

Hansen's parents also purchased a personal excess indemnity endorsement from Aetna. The endorsement states that Aetna "will indemnify the insured for ultimate net loss which the insured shall become legally obligated to pay in excess of the applicable underlying limit." Exhibit 3 of Plaintiff's Complaint at § B.1. The declaration sheet provides $1,000,000.00 in personal excess indemnity coverage and Hansen falls within its definition of an insured.

Both the Hastings and Hartford policies contain virtually identical "other insurance" clauses. Hartford's clause states:

This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Plaintiff's Exhibit 2 at § II Conditions, ¶ 8. Plaintiff's "other insurance" clause refers to "valid *or* collectible" insurance, but is otherwise identical to Hartford's clause. Exhibit 1, General Conditions at ¶ 8 (emphasis added). The Aetna endorsement also contains an "other insurance" clause which provides:

The insurance afforded by this endorsement shall be excess insurance over any other valid and collectible insurance available to the Insured and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise.

Exhibit 3 at ¶ B.1.

The underlying action was pending in this Court before the Honorable Richard A. Enslen[1] when it was submitted to mediation. A mediation award in the amount of $300,000.00 was accepted by all parties to that action and, on November 13, 1990, judgment in that amount was entered in favor of Hadary and against Weaver and Hansen. Plaintiff undertook the defense of Hansen and Weaver and paid the $300,000.00 judgment. It also expended approximately $26,000.00 in investigating and defending the underlying action. Defendants contend that at no time were they approached by plaintiff to assume Hansen's defense and that plaintiff agreed to the mediation settlement without requesting defendants' consent.

## II.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908

(6th Cir.1982). There is no material issue of fact for trial unless, by viewing the evidence in favor of the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Boddy v. Dean*, 821 F.2d 346, 349 (6th Cir.1987). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Potters Medical Center v. City Hospital Association*, 800 F.2d 568, 572 (6th Cir.1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## III.

Michigan law does not permit construction of an insurance policy if the language of the policy is plain and unambiguous. *Mondou v. Lincoln Mutual Casualty Company*, 283 Mich. 353, 278 N.W. 94 (1938). Plaintiff argues that under the plain language of the respective policies Hartford is the "primary" insurer and so is liable. The Hartford policy is excess (*i.e.* "secondary" insurance) over any other insurance *"except insurance written specifically to cover as excess over the limits of liability that apply in this policy."* Exhibit 2 at § II, Conditions ¶ 8 (emphasis added). Plaintiff argues:

---

**1.** File No. 1:89–CV–1076.

Thus, the Hartford policy is excess unless the underlined exception applies. If the underlined exception applies, the Hartford policy by its plain language is not excess and must, therefore, necessarily be primary. The underlined exception applies since the Aetna policy is written specifically to cover as excess of the limits of liability that apply in the Hartford policy. Since the underlined exception applies, the Hartford policy is primary.

Plaintiff's Brief at 6.

Plaintiff seems to be arguing that because the Aetna endorsement was specifically designed to be secondary insurance to the Hartford policy, the Hartford policy is necessarily primary insurance. However, all that plaintiff has shown is that as compared with the Aetna endorsement, the Hartford policy is primary. Clearly that does not make Hartford the primary insurer whenever there are competing insurance policies. The Court is satisfied that the competing "other insurance" clauses in plaintiff's and Hartford's respective policies are irreconcilable. Their language is practically identical, and it is evident that both policies intend that if there is some primary insurance coverage for a loss, their coverage will become secondary.

This lawsuit requires the Court to determine which of two competing approaches should be taken to the "other insurance" clauses contained in the policies. One panel of the Michigan Court of Appeals has adopted the minority view as articulated in *Lamb–Weston, Inc. v. Oregon Automobile Insurance Company,* 219 Or. 110, 341 P.2d 110 (1959).

[T]he conflicting "other insurance" clauses are declared "repugnant and are "rejected *in toto.*" Once the conflicting clauses are disregarded, both policies clearly provide coverage. Each insurer's liability is then prorated based on the proportion of the combined policy limits represented by the limits of each insurer's policy.

*Farm Bureau Mut. Ins. Co. v. Horace Mann Ins. Co.,* 131 Mich.App. 98, 103–04, 345 N.W.2d 655 (1983) (citations omitted). *See also Mary Free Bed Hospital & Rehabilitation Center v. Insurance Co. of North America,* 131 Mich.App. 105, 345 N.W.2d 658 (1983).[2] The rationale for this approach is that it avoids the "intractable conflict" of attempting to resolve a circular argument. If the "other insurance" clauses are in conflict, there is no way to really know which insurance is primary and which is secondary. The fair thing to do is split the difference.

The majority view, on the other hand, attempts to resolve the argument by undertaking a "closeness to the risk" analysis of the competing insurance policies. This analysis involves the examination of three factors:

(1) Which policy specifically described the accident-causing instrumentality?

(2) Which premium is reflective of the greater contemplated exposure?

(3) Does one policy contemplate the risk of the accident-causing instrumentality with greater specificity than the other policy, that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Insurance Co. v. Northstar Mutual Insurance Co.,* 281 N.W.2d 700, 704 (Minn.1979). The circularity of the argument hoped to be avoided by the minority view is thus minimized by an examination of all the policies in order to determine which was *intended* to be primary.

This approach was followed by the Michigan Supreme Court in *Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986). However, the court limited its holding to situations involving Michigan's no-fault insurance statute and refused to express an opinion on the cor-

**2.** Both of these cases were decided by the same panel on the same day. In each case the insured was covered by two different insurers for identical types of claims. In *Farm Bureau,* the insured was a public school teacher covered by two liability policies, one as a member of the Michigan Education Association and one as an employee of the public school district. *Farm Bureau,* 131 Mich.App. at 100, 345 N.W.2d 655. In *Mary Free Bed,* the insured was covered by two different health care policies. *Mary Free Bed,* 131 Mich.App. at 106, 345 N.W.2d 658.

rectness of the *Farm Bureau* and *Mary Free Bed* results. The court found a health insurer to be primarily liable over a no-fault automobile insurer because legislative intent is that no-fault coverage is secondary. This permits the no-fault carrier to offer lower rates to individuals who coordinate their health insurance benefits with their automobile insurance. *Federal Kemper*, 424 Mich. at 546–49, 383 N.W.2d 590.

Under the facts of the present case, the majority approach is most sound. Here, plaintiff's policy was specifically written to cover liability arising out of boat accidents involving Weaver's boat. Hansen was an insured as defined by the policy. Clearly, plaintiff is the primary insurer. It is merely fortuitous that had Weaver not had liability coverage on his boat, Hartford would have covered Hansen's liability under her parents' homeowners policy. This case is distinguishable from *Farm Bureau* and *Mary Free Bed* in that the competing policies before the Court are different types of policies. If the Court was presented with competing homeowners policies or competing health insurance policies, the result might be different.

Finally, the Court notes that Michigan law favors the imposition of liability on the owner of a negligently operated watercraft where that craft is being operated with the owner's consent. M.C.L.A. § 281.1131. Because the owner is liable, where the owner specifically insures against that liability, his liability insurer is primarily responsible for the payment of claims. *See also Werner v. Travelers Indemnity Co.*, 55 Mich. App. 390, 222 N.W.2d 254 (1974) (automobile owner's uninsured motorist coverage is primary vis à vis passenger's coverage).

## IV.

For the reasons stated above, defendants' motion for summary judgment is granted.