**NORTHERN GROUP SERVICES, INC., Masco Industries, Inc. Employees Benefit Plan for Hourly Employees of Forming Technology; Masco Industries, Inc. Employees Benefit Plan for Salaried Employees; Masco Industries, Inc. Self–Funded Employee Benefits Plans; and Highland Appliance Companies Medical Benefit Plan, Plaintiffs–Appellees,**

v.

**AUTO OWNERS INSURANCE COMPANY; Citizens Insurance Company of America; Michigan Mutual Insurance Company; and Allstate Insurance Company (86–1614),**

State Farm Mutual Automobile Insurance Company (86–1615), Auto Club Insurance Association (86–1616), Defendants–Appellants.

Nos. 86–1614, 86–1615, 86–1616.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1987.

Decided Nov. 13, 1987.

Rehearing and Rehearing En Banc Denied Dec. 30, 1987.

Stephen E. Glazek (argued), Barris, Sott, Denn & Driker, James L. Borin, Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Detroit, Mich., for defendant-appellant in No. 86–1614.

Michael Shpiece, Honigman, Miller, Schwartz, and Cohn, Detroit, Mich., Stephen Wasinger (argued), for plaintiffs-appellees.

John A. Ashton (argued), Draugelis, Ashton, Scully, Haynes, MacLean & Pollard, Plymouth, Mich., for defendant-appellant in No. 86–1615.

David J. Lanctot (argued), Dickinson, Brandt, Hanlon, Becker & Lanctot, Detroit, Mich., for defendant-appellant in No. 86–1616.

Before MERRITT and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.

MERRITT, Circuit Judge.

A group of automobile insurance companies challenge a ruling on summary judgment that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.*, preempted the Michigan No–Fault Automobile Insurance Act, Mich.Comp.Laws § 500.3109a, to the extent that the Michigan law allows policy provisions which conflict with ERISA plans. ERISA's preemption provision, 29 U.S.C. § 1144(a), provides in relevant part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

The Michigan statute requires that no-fault automobile insurers offer coordination of benefits provisions, and state court interpretation of that law makes the liability under such no-fault coverage secondary to other health and accident coverage. The plaintiff plans make no-fault liability primary and their own liability secondary and hence conflict with the Michigan insurance law. We reverse, holding that the Michi-

gan law is saved from preemption by the ERISA "savings" clause, 29 U.S.C. § 1144(b)(2)(A),

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities,

and is not barred by the "deemer" clause, 29 U.S.C. § 1144(b)(2)(B),

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts....

The questions of preemption analysis and interpretation under the first preemption clause, § 1144(a), and the savings clause are straightforward and not particularly difficult. The questions under the "deemer" clause are more complex.

### I. *Proceedings Below*

Several ERISA plans that provide employee health and medical benefits brought this declaratory action in the District Court seeking injunctive relief from medical expenses paid under no fault insurance policies by those companies to those covered by the ERISA plans. The ERISA plans contain coordination of benefits provisions that purport to make the liability of the plans secondary to state mandated no-fault automobile insurance. The Masco plan for salaried employees provides:

> If your state has a no-fault motor vehicle law, the coverage required by the state is considered primary for motor vehicle related medical expenses. If you or a covered dependent incurs medical expenses as a result of a motor vehicle accident, those expenses should first be submitted to your motor vehicle insurance carrier. Any eligible expenses which are not paid by that carrier will then be considered for payment by the Masco Medical Plan. The Masco Medical Plan is considered secondary for no-fault motor vehicle expenses.

The automobile insurance companies defending the claims have issued no-fault automobile insurance contracts in accordance with Mich.Comp.Laws § 500.3109a. The Michigan law "mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has 'other health and accident coverage.'" *Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.*, 424 Mich. 537, 546, 383 N.W.2d 590, 594 (1986). In *Federal Kemper* the Supreme Court of Michigan determined that section 3109a imposed primary liability on a health insurer when the insured also had a no-fault policy with a coordination of benefits clause and the no-fault insurer charged lower premium rates. Relying on section 3109a and *Federal Kemper*, the automobile insurance companies have made claims against the employee benefit plans for reimbursement, asserting that they, not the plans, are secondarily liable.

In order to settle this confusion over the coordination of benefits between the plans and the statutorily required no-fault coverage, the plans and a plan administrator brought a declaratory action. After discovery, the parties made cross motions for summary judgment. The District Court held that ERISA preempted the Michigan law because the Michigan law "relate[d] to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a). *Northern Group Services v. State Farm Mutual Automobile Insurance Co.*, 644 F.Supp. 535 (E.D.Mich.1986). Further, the Michigan law was not protected by the savings clause, § 1144(b)(2)(A), because the plans were excluded by the deemer clause, § 1144(b)(2)(B). Because the plans were protected by ERISA, Michigan could not regulate the benefits they provided. The District Court concluded that "[t]he Michigan No–Fault Automobile Insurance Act is preempted to the extent that it has an impact on the ERISA plans." *Id.* at 538. The Court granted plaintiffs' motion for summary judgment and denied defendants' cross motion.

### II. *"Relate to"*

As was inevitable with such broadly phrased statutory language, the extent of

the preemption provision has been the subject of much litigation.

*Shaw v. Delta Air Lines*, 463 U.S. 85, 96–98, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), made clear that a law "relates to" an employee benefit plan if it has "a connection or reference to such a plan." The Court based this reading not only on a plain meaning approach but on the expressed legislative intent giving the words "relate to" a broad scope. *Id.* at 97–98, 103 S.Ct. at 2900. *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), held that a state law requiring that health insurers provide mental-health-care benefits "clearly" relates to ERISA welfare benefit plans. *Id.* at 739, 105 S.Ct. at 2389.

In *Fort Halifax Packing Co. v. Coyne*, — U.S. —, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court further considered the meaning of the phrase "relate to any employee benefit plan." In *Fort Halifax* a Maine official sought to enforce the state statute requiring employers, in the event of a plant closing, to provide a one-time severance payment to employees not covered by express contract agreements providing for severance pay. The Court held that the Maine severance pay statute did not "relate to any employee benefit plan" under the ERISA preemption provision, 29 U.S.C. § 1144(a), and thus was not preempted. Relying on the meaning and underlying purpose of section 1144(a), the Court rejected Fort Halifax's argument that any state law pertaining to a type of employee benefit listed in ERISA, such as severance pay, necessarily regulates a plan and is preempted.

Section 1144(a), the Court noted, expressly states that state laws are superseded to the extent they "relate to any employee benefit *plan*." The Court said that the preemption provision "does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit *plans*'." *Id.* at 107 S.Ct. at 2215 (emphasis original). The Court observed that ERISA uses the words "benefit" and "plan" separately throughout and nowhere treats the two as synonymous. "Given the

basic difference between a 'benefit' and a 'plan,' Congress' choice of language is significant in its pre-emption of only the latter." *Id.* at 2216.

The Court identified the purpose of the preemption provision: to allow plans to adopt a uniform scheme for coordinating complex administrative activities, unaffected by divergent regulatory schemes in different states. Congress was aware of the administrative realities faced by employee benefit plans, and sought to "eliminat[e] the threat of conflicting or inconsistent State and local regulation." *Id.* (*quoting* 120 Cong.Rec. 29197 (1974) (remarks of Rep.Dent)). The Court explained that an employer who undertakes systematically to pay certain benefits assumes a number of obligations such as ascertaining eligibility, determining benefits, making payments, monitoring the availability of funds for benefit payments, and keeping records in compliance with reporting requirements:

> The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others.

*Id.* Thus, ERISA's preemption provision was designed generally to "ensure[ ] that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.* at 2217.

The analysis in *Fort Halifax* does not affect the result here. *Fort Halifax* held that a Maine state law requiring a *one-time* severance payment when a plant is closed did not "relate to" any *plan* because it imposed no continuing administrative obligation. The Court described the state-law

obligation as one "[t]o do little more than write a check." Under the *Fort Halifax* circumstances, preempting state law to clear the way for exclusive federal regulations would "in no way serve the overall purpose of ERISA," because "there would be nothing to regulate." *Id.* at 2218, 2220.

By contrast, the Michigan coordination-of-benefits law imposes not a one-time duty but rather a continuing and predictable obligation to coordinate benefits with the other insurance coverage of all ERISA beneficiaries. Affected ERISA administrators would be required to "foresee the need to make regular payments ... on an ongoing basis," *Fort Halifax*, 107 S.Ct. at 2219 n. 9, and to make appropriate actuarial (and cost) adjustments.

In summary, the Michigan law conflicts directly[1] with the plan: it allocates obligations to make insurance payments contrary to the express coordination-of-benefits language of the plan. Holding that this state law does not "relate to" the plan would run contrary to the plain meaning of the text and to the relevant case law and legislative history.

Because this state law "relates to" ERISA plans, we must proceed to see what effect the "savings" and "deemer" clauses have on preemption.

### III. *"Savings" and "Deemer" Clauses*

The difficult problem in interpreting the preemption portion of ERISA § 514, 29 U.S.C. § 1144 is defining the scope of each of the three critical clauses so that each has meaning and so that benefit obligations are governed by a rational system of state law and federal common law. Congress indicated its intention only in a very general way and left to the federal courts the problem of developing on a case-by-case basis principles of preemption of state law.

If the first preemption clause, § 1144(a), is read restrictively, the "savings" and "deemer" clauses become unnecessary. Compounding the difficulty is a tendency in the legislative history of ERISA to conflate

and confuse the three clauses. For example, an oversight report issued three years after the enactment of ERISA cites the need "to insure uniformity of regulation" by legislating preemption but then says:

There was a recognition of the necessity for the preservation of some State activity in this field and certain limited exceptions were made to the broad preemption scheme. *In general these exemptions are designed to save State law as it applies to entities which are not employee benefit plans ..., to the extent that such regulation does not relate to employee benefit plans.*

. . . . .

These exceptions are designed to delineate affirmatively the limits of the "field" preempted by section 514(a), and articulate a second, but distinctly subordinate, policy within the section of preserving state authority *insofar as it does not relate to any plan....*

ERISA Oversight Report of The Pension Task Force of the Subcommittee on Labor Standards, House Committee on Education and Labor, at 8–9 (1977) (emphasis added).

These subsequent legislators (or their staff) did not seem to recognize or consider the fact that the "savings" clause would not be necessary at all if it only saves state laws that do not "relate to" ERISA plans. The savings clause would not be necessary to save something that the preemption clause had not reached in the first instance. *See Metropolitan Life*, 471 U.S. at 739–40, 105 S.Ct. at 2389.

### A. *"Savings" Clause*

After preempting state laws that "relate to" plans, the "savings" clause provides the qualification that preemption does not apply to a state law that "regulates insurance, banking, or securities." Like the mandated-benefits act at issue in *Metropolitan Life Insurance Co. v. Massachusetts,* the Michigan coordination of benefits law controls the terms of insurance contracts.

---

1. The exception for "too tenuous, remote, or peripheral" regulation created in *Shaw*, 463 U.S. at 97 n. 17, 103 S.Ct. at 2900 n. 17, thus is inapplicable here. *Cf. Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 553–56 (6th Cir. 1987).

The Michigan law clearly "regulates insurance" within the meaning of the savings clause. This conclusion comports both with a common sense view of the statutory language and with a more formal assessment that the practice falls within the meaning of "business of insurance" covered by the McCarran–Ferguson Act. *Metropolitan Life*, 471 U.S. at 740–43, 105 S.Ct. at 2389–91.

In order to satisfy a common sense understanding of the phrase "regulates insurance," a state law must have not merely an impact on the insurance industry, but must be specifically directed toward that industry. *Pilot Life Insurance Co. v. Dedeaux,* —— U.S. ——, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). The Michigan coordination of benefits law obviously is principally directed at various types of other-insurance coverage held by all of its residents who elect the coordination of benefits option that is mandated by § 3109a. Mich. Comp.Laws 500.3109a.

Three criteria have been identified as relevant to the McCarran–Ferguson Act determination:

> (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.

*Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 (quoting *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)). Like other courts that have applied these criteria to coordination-of-benefits or similar requirements, we find the first two of the three criteria easily satisfied. The practice of coordination of benefits spreads risk and regulates permissible terms of the insurance contract. *See, e.g., United Food & Commercial Workers v. Pacyga,* 801 F.2d 1157, 1161 (9th Cir.1986); *State Farm Mutual Insurance Co. v. American Com-*

*munity Mutual Insurance Co.,* 659 F.Supp. 635, 637 n. 2 (E.D.Mich.1987).

Although the scope of § 3109a extends beyond traditional insurance to encompass other types of "health and accident coverage" including Blue Cross and Blue Shield benefits and health maintenance organizations,[2] the third McCarran–Ferguson Act criterion also is substantially satisfied because coordination of benefits is aimed principally at different types of *insurance* coverage. *See LeBlanc v. State Farm Mutual Auto Insurance Co.,* 410 Mich. 173, 301 N.W.2d 775, 784–85 (1981).

### B. "Deemer" Clause

The Michigan coordination of benefits law "regulates insurance" and therefore is encompassed by the savings clause. The final question becomes: what is the effect of the "deemer clause"?

### 1. The Problem of Self-Insuring Plans

Most judicial interpretation of the deemer clause as an exception to the savings clause has been confined to a distinction which makes the deemer clause applicable to self-insuring ERISA plans and makes it inapplicable to plans that purchase insurance. Even direct regulation of the content of insurance policies that an ERISA plan purchases is not barred by the deemer clause. Regulation of the insurance contract or of the insurer from which the plan buys its policy does not entail treating or deeming *the plan* as an insurer or as otherwise in the "business of insurance." *See Metropolitan Life,* 471 U.S. at 735 n. 14, 742 n. 18, 105 S.Ct. at 2387 n. 14, 2390 n. 14; *Michigan United Food & Commercial Workers Unions v. Baerwaldt,* 767 F.2d 308, 312–13 (6th Cir.1985) *cert. denied,* 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 77 (1986).

The *Metropolitan Life* Court appeared in dicta to assume that this distinction would leave insured plans "open to indirect regu-

---

**2.** *See, e.g., LeBlanc v. State Farm Mutual Automobile Insurance Co.,* 410 Mich. 173, 301 N.W. 2d 775 (1981) (Medicare); *United States Fidelity & Guaranty Co. v. Group Health Plan,* 131 Mich. App. 268, 345 N.W.2d 683 (1983) (health mainte-

nance organization); *Nyquist v. Aetna Insurance Co.,* 84 Mich.App. 589, 269 N.W.2d 687 (1978) (Blue Cross & Blue Shield), *aff'd,* 404 Mich. 817, 280 N.W.2d 792 (1979).

lation" by state insurance laws while leaving self-insured plans unregulated. In *Metropolitan Life*, the Court upheld under the savings clause state laws which "mandate" that specific benefits be included in group health plans. No question was presented under the deemer clause. As an aside the Court observed:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

471 U.S. at 747, 105 S.Ct. at 2393. At that point the Court dropped the following footnote:

> A 1977 Activity Report of the House Committee on Education and Labor recognized the difference in treatment between insured and non-insured plans: "To the extent that [certain programs selling insurance policies] fail to meet the definition of an 'employee benefit plan' [subject to the deemer clause], state regulation of them is not preempted by section 514, even though such state action is barred with respect to the plans which purchase these 'products.' " H.R.Rep. No. 94–1785, p. 48. A bill to amend the saving clause to specify that mandated-benefit laws are preempted by ERISA was reported to the Senate in 1981 but was not acted upon.

*Id.* at 747 n. 25, 105 S.Ct. at 2393 n. 25.

Our consideration of the deemer clause, thus, must answer two questions. First, are the plans at issue "insured"? Second, if a plan is not "insured," is state regulation of coordination of benefits under the plan totally barred by the deemer clause? In other words, is the deemer clause a total bar to state regulation of any insurance provision of a self-insured plan even though the deemer clause would not preempt state law if the plan is funded through the purchase of insurance?

There is no dispute that the Masco Plans are self-insured; the parties disagree about

the status of the Highland plan, which is covered by stop-loss insurance. Appellee plans argue that the Highland Plan is "uninsured" because (1) the actual insured is the employer, Highland Appliance Co., and not the Plan; and (2) the insurer's liability comes into effect only when specified benefit ceilings are exceeded. Both arguments are without merit. Whether the actual insured is the employer or the ERISA plan, the stop-loss insurance is purchased to "provide benefits for plans subject to ERISA." *Metropolitan Life*, 471 U.S. at 738 n. 15, 105 S.Ct. at 2388 n. 15. That the Plan pays a deductible does not alter the fact that benefits payable above specified levels, either on an individual beneficiary or in the aggregate, are nonetheless insured. *See Baerwaldt*, 676 F.2d at 313.

The Masco plans, however, apparently are totally self-insured. Are they thereby totally immune from traditional state insurance regulation? Upon full consideration of the statutory scheme, we conclude that they are not.

Although Congress declared its express intention to generally preempt state law in the preemption clause, 29 U.S.C. § 1144(a), it equally expressly declared its intention to preserve state regulation of insurance in the savings clause, 29 U.S.C. § 1144(b)(2)(A). Therefore, in determining the scope even of express ERISA preemption, the general principle still applies that a court "must presume that Congress did not intend to preempt areas of traditional state regulation." *Metropolitan Life*, 471 U.S. at 740, 105 S.Ct. at 2389 (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

This presumption receives specific reinforcement from two subsections in § 514. ERISA section 514(d) says:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States....

29 U.S.C. § 1144(d). This subsection provides an independent source of protection to state insurance regulation by including

in its coverage the McCarran-Ferguson Act, which says:

> The business of insurance, and every person engaged therein, shall be subject to the laws of the several states which relate to the regulation or taxation of such business.

15 U.S.C. § 1012(a); *see Metropolitan Life*, 471 U.S. at 744 n. 21, 105 S.Ct. at 2392 n. 21; *see also Shaw*, 463 U.S. at 101 n. 22, 103 S.Ct. at 2902 n. 22

Section 514(d) makes no specific reference to the McCarran-Ferguson Act. Section 514(b)(2)(B), however, by using the phrase of art, the "business of insurance," makes clear that the scope of state insurance regulation saved by the "savings" clause must include the "business of insurance" as defined by the McCarran-Ferguson Act.

In the face of this redoubled statutory preservation of the principle favoring state regulation of insurance, it appears contrary to the overall legislative purpose to read the deemer clause broadly to bar all state regulation of self-insured plans. In this area of traditional state regulation, "the presumption is against pre-emption." *Metropolitan Life*, 471 U.S. at 741, 105 S.Ct. at 2390; *see also Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir.1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

The legislative history behind the deemer clause is ambiguous. As the Court observed in *Metropolitan Life*, the preemption sections "are not a model of legislative drafting" because "while Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time." 471 U.S. at 739–40, 105 S.Ct. at 2389.

Before conference, the House and Senate versions of the bill preempted only those state laws that related to the "fiduciary, reporting and disclosure responsibilities" of the Act or that related to "the subject matter regulated" by the Act. Both versions saved state insurance regulation, but neither contained a "deemer" clause until the House substituted the text of H.R. 12906 for that of H.R. 2 just prior to passage of the pre-conference House bill. *See* Subcomm. on Labor of the House Comm. on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974, at 2671, 2921. Before conference, the committee staff, noting the difference between the House and Senate versions on the "deemer" clause reported itself divided on whether "the House provision should be adopted" and recommended that, if it were, adoption be for only a limited period of time and subject to subsequent study. *Id.* at 5283. The conference version of the bill broadened preemption, retained the deemer clause without any time limit, and mandated Congressional study of "the effects and desirability of the Federal preemption of State and local law with respect to matters relating to pension and similar plans." 29 U.S.C. § 1222.

In 1977, the Activity Report of the House Committee on Education and Labor expressed the opinion that

> the "deemed" language was utilized to create an irrebuttable presumption that these plans are not insurance, trust companies, etc. for purposes of state regulation. As a drafting technique the "deemed" is used in section 514(b) not to *bar* the use of a legal fiction by the states but to *create* what may amount to a legal fiction in a given circumstance. The irrebuttable presumption would not be overcome even if an employee benefit plan engages in activities which bring it within the insurance, trust, or securities activities generally regulated by a state.

ERISA Oversight Report of the Pension Task Force of the Subcommittee on Labor Standards, House Committee on Education and Labor, at 10 (1977) (emphasis in original). This *post hoc* explanation, while interesting, is entitled to little weight when it conflicts with a reasonable interpretation of a statute based on its text and its legislative history prior to enactment. *See Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 117–18 & n. 13, 100 S.Ct. 2051, 2060–61 & n. 13, 64 L.Ed.2d 766 (1980).

Certain aspects of the legislative history imply that a main concern of Congress in adopting the final broad version of section 514 that emerged from the conference committee was to avoid intentional—and perhaps pretextual—attempts by states to restrict the discretion of ERISA plans to engage in practices that otherwise would be permitted by federal law.[3] *See American Progressive Life & Health Insurance Co. v. Corcoran,* 715 F.2d 784, 787 (2d Cir. 1983). Neither intention nor pretext, however, is raised by the state regulation here.

## 2. *State and Federal Interests*

A conflict between two coordination of benefits clauses, as here, invokes a large body of substantive law that has developed over time to resolve such conflicts, law based on principles of restitution as applied in the insurance context. *See, e.g.,* 8A Appleman, *Insurance Law & Practice* §§ 4906–23; 44 Am Jur.2d, *Insurance* §§ 1781–93. The Michigan legislature and courts simply have superimposed upon this body of law a reasonable policy judgment that a conflict between benefits available under no-fault and other benefits should be resolved in favor of the no-fault insurer. This resolution eliminates duplication of recovery by the insured and furthers the twin purposes of § 3109a to contain both auto insurance costs and health insurance costs. *See Federal Kemper Insurance Co. v. Health Insurance Administration, Inc.,* 424 Mich. 537, 383 N.W.2d 590, 596 (1986).

Neither the principal purpose nor the main effect of the Michigan coordination of benefits law is to restrict the range of options open to ERISA plans. The State legislature and its courts simply have decided that medical expenses resulting from an auto accident should be paid first by those who have specifically insured the medical risk in the form of health and hospitalization coverage rather than by the no-fault insurance liability carrier. Auto no-fault coverage is compulsory, and the State therefore has a strong, legitimate interest in keeping down the costs of this coverage. This interest is not likely to be exercised in a parochial or discriminatory way. When there is multiple coverage, loss simply is first spread to entities other than no-fault insurers. ERISA plans are treated no differently than other entities providing "coverage."

In the absence of a showing of state purpose specifically to regulate the content of welfare benefits provided by ERISA, the effect of the deemer clause should be assessed by a balancing of the interests in federal uniformity against those of state primacy in the regulation of insurance. Put another way, should interstate uniformity in the coordination of a plan's benefits with other insurance benefits override a state's traditional interest in a uniform rule for allocating comparative liability among all insurers? Which principle of uniformity is the least disruptive and the most likely to create the orderly system of reliable benefits that Congress had as its object in enacting ERISA?

Exemption of the Masco Plan and other self-insurers from the Michigan rule of *Federal Kemper* would disrupt the State's ability to administer a uniform scheme of "other-insurance" or "coordination of benefits" law. Not only would exemption frustrate the goal of cost containment, it would also create unpredictability and possibly undermine the financial stability of no-fault insurers.

Against this injury to the State scheme, we must weigh the federal interest in uniformity of administration of ERISA plans. The question is whether ERISA plan provi-

---

**3.** *See Metropolitan Life,* 471 U.S. at 745–46 & nn. 23–24, 105 S.Ct. at 2392 & nn. 23–24. This view is reinforced by the language of the deemer clause itself, which protects ERISA plans from being "deemed" insurers or otherwise in the business of insurance by any state "purporting" to regulate insurance. 29 U.S.C. § 1144(b)(2)(B). Sponsoring senators expressed their satisfaction that states would be barred from frustrating Congressional intent by the "*guise* of state-enforced professional regulation" or by "state laws hastily *contrived* to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the federal regulatory scheme. *See* 12 Cong. Rec. 29,933 (Sen. Williams); 120 Cong.Rec. 29,-942 (Sen. Javits) (emphases added).

sions for coordination of benefits should receive a uniform national construction.

### 3. *The Proper Role of Federal Common Law*

One "uniform rule" would be simply to defer willy nilly to the provisions of the ERISA plan, an obviously arbitrary result that would allow the plan trustees to decide every issue in their own favor without judicial review. The other alternative would be for the federal courts to develop an entire body of federal common law to resolve "other insurance" disputes between ERISA plans and other insurers on a case-by-case basis—an approach that would be inefficient and uninformed by any well-defined independent federal interest.

Over the years states, including Michigan, have developed a substantial and complex body of common law and statutory principles to resolve questions of priority that arise when multiple coverage produces conflicts of the type presented in this case. This corpus of law embodies principles of restitution and risk allocation that have evolved from acquired state experience and expertise. Although these rules may be imperfect and display some minor variation from state to state, in the aggregate they nonetheless represent an interconnected and complex network of generally applicable laws with which the nation's insurers have grown familiar. *See, e.g.,* 8A Appleman, *Insurance Law & Practice* §§ 4906–23.

Although the drafters of ERISA clearly contemplated and invited the development of federal common law [4] to fill gaps resulting from ERISA's broad preemption of state law outside the insurance field, it is less than clear that this would be a salutary development in an area that would overlap and inevitably conflict with established state insurance jurisprudence. In the absence of any particular federal interest in uniformity that would inform the development of federal common law on this issue, what federal common law we might develop surely would mostly parrot the principles already developed by the state courts. Moreover, application of a federal rule of common law here would trigger a substantial risk of "disrupt[ing] commercial relationships predicated on state law." *West Virginia v. United States,* — U.S. —, 107 S.Ct. 702, 705, 93 L.Ed.2d 639 (1987) (quoting *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 729, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979)).

This entire scenario would undermine the general authority and autonomy the states now enjoy in their regulation of insurance. In view of the expressed intent of Congress and of the Supreme Court that ERISA should be read consistently with the policies underlying the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* there is strong reason to respect the policy choice and expertise of the state of Michigan in the area of coordination of benefits.

Accordingly, we read the "deemer" clause no more broadly than the underlying purpose of § 514 and of ERISA as a whole—the interests of national uniformity.[5]

This approach better reconciles the competing national policies favoring (1) comprehensive federal regulation of employee benefit plans and (2) state primacy in the regulation of insurance. Nor is this approach necessarily inconsistent with the dicta in *Metropolitan Life* concerning insured versus self-insuring plans.[6] 471 U.S. at 740–41, 747, 105 S.Ct. at 2389–90, 2393. We

---

**4.** Sen. Javits remarked: "It is also intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29,942.

**5.** *See* 120 Cong.Rec. 29,942 (remarks of Sen. Javits): "[T]he emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required—but for certain exceptions—the dis-

placement of State action in the field of private employee benefit programs."

**6.** In *Pilot Life Insurance Co. v. Dedeaux,* 107 S.Ct. at 1555, the Court construed the sweep of the savings clause as a whole and in light of the object and policy underlying ERISA, thus going beyond the meaning imposed merely by application of the McCarran-Ferguson Act factors. We take the same approach here to reconciliation of both the savings and deemer clauses.

preserve a distinction between insured and self-insuring plans. Insured plans would be *per se* "open to indirect regulation." *Id.* at 747, 105 S.Ct. at 2393. Self-insuring plans would be subject to state regulation only when no independent federal interest in national uniformity exists to inform and guide the creation of federal common law. *See Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1457–58 (9th Cir.1986); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *cf. Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

■■■ Our reading of the savings and deemer clauses thus requires at a minimum that, for the deemer clause to override the savings clause in a given case, there must be some ERISA interest in uniformity to outweigh the McCarran-Ferguson interest in state regulation of insurance. When, as here, there is no demonstrated interest in national uniformity and preemption of state law would substantially disrupt a state regulatory scheme generally applicable to both insured and self-insured ERISA plans, as well as to insurers generally, the deemer clause does not bar regulation. To this limited degree, self-insured ERISA plans so regulated are not excluded from the savings clause by the deemer clause; they are thus subject to state insurance regulation pursuant to the savings clause. The Michigan no-fault coordination of benefits rule is the type of insurance regulation of an ERISA plan that is not barred by the deemer clause. We find support for this result in *Employers Association v. New Jersey,* 601 F.Supp. 232 (D.N.J.) (state coordination of benefits not barred by the deemer clause), *aff'd mem.,* 774 F.2d 1151 (3d Cir.1985) (post-*Metropolitan Life*); *contra State Farm Mutual Insurance Co. v. American Community Mutual Insurance Co.,* 659 F.Supp. 635 (E.D.Mich.1987).

The judgment below is therefore reversed and the case remanded to the District Court for further proceedings not inconsistent with this opinion and with the Michigan law as enunciated in *Federal*

*Kemper.* *See Federal Kemper,* 424 Mich. 537, 383 N.W.2d at 596 n. 10.